**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROLAND HILLS,<br><br>            Plaintiff,<br>vs.<br>SERVICE EMPLOYEES INTERNATIONAL UNION; SERVICE EMPLOYEES LOCAL 221; DEQUASIA GARDNER, Union Organizing Director; ABDUL SAYID, Union Worksite Organizer; SHARON-FRANCES MOORE; ANDY STERN, SEIU President,<br><br>            Defendants. | CASE NO. 09cv1919 WQH (WVG)<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the Motion for Summary Judgment filed by Defendants Service Employees International Union Local 221 ("SEIU Local 221"), Abdul Sayid, Dequasia Gardner, and Sharon-Francis Moore (ECF No. 31), the Motion for Summary Judgment filed by Defendants Service Employees International Union ("SEIU International") and Andy Stern (ECF No. 32), and the Motion for Recusal filed by Plaintiff Roland Hills (ECF No. 41).

**I.    Background**

On September 2, 2009, Plaintiff Roland Hills, proceeding pro se, initiated this case by filing the verified complaint. (ECF No. 1). Plaintiff asserts a claim of intentional discrimination based on race in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C.

§ 2000 et seq., and § 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, against Defendants Abdul Sayid, worksite organizer for SEIU Local 221, in his individual and official capacities; Dequasia Gardner, organizing director for SEIU Local 221, in her individual and official capacities; Sharon-Frances Moore, President of SEIU Local 221, in her official capacity; SEIU Local 221; Andy Stern, President of SEIU International, in his official capacity; and SEIU International. Plaintiff also asserts a second claim for violation of the National Relation Act, 29 U.S.C. § 158(b)(1)(A), against SEIU Local 221 for preventing Plaintiff from resigning from the union until the month of June.

On January 18, 2011, Defendants SEIU Local 221, Gardner, Sayid, and Moore filed a Motion for Summary Judgment. (ECF No. 31). On that same day Defendants SEIU International and Stern filed a Motion for Summary Judgment. (ECF No. 32). On February 8, 2011, Plaintiff filed an Opposition to the Motion for Summary Judgment filed by Defendants SEIU Local 221, Sayid, Gardner, and Moore (ECF No. 34) and also filed an Opposition to the Motion for Summary Judgment filed by SEIU International and Stern (ECF No. 35). On February 15, 2011, Defendants SEIU Local 221, Sayid, Gardner, and Moore filed a Reply. (ECF No. 36). On that same day Defendants SEIU International and Stern filed a Reply. (ECF No. 37).

On July 7, 2011, Plaintiff filed a Motion for Recusal of United States District Judge William Q. Hayes and United States Magistrate Judge William V. Gallo. (ECF No. 41). Plaintiff contends that these judges should be disqualified pursuant to 28 U.S.C. § 455(a) on the grounds that the judges have failed to ensure the "just, speedy and inexpensive resolution" of this action. *Id*. at 4-5 (citing 28 U.S.C. § 471; Fed. R. Civ. P. 1). Plaintiff contends that delay in ruling on motions and rescheduling of court proceedings show "the unwillingness on the part of these Judges to provide Plaintiff with the opportunity to have his case presented to a jury." *Id*. at 4.

Pursuant to 28 U.S.C. § 455(a), a district judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The standard for recusal under § 455 is "whether a reasonable person with knowledge of all

the facts would conclude that the judge's impartiality might reasonably be questioned." *Mayes v. Leipziger,* 729 F.2d 605, 607 (9th Cir. 1984) (internal quotations omitted). "Typically, a judge's partiality must be shown to be based on information from extrajudicial sources, although sometimes, albeit rarely, predispositions developed during the course of a trial will suffice." *F.J. Hanshaw Enterprises, Inc. v. Emerald River Development, Inc*., 244 F.3d 1128, 1144-45 (9th Cir. 2001) (citing *Liteky v. United States*, 510 U.S. 540, 554-55 (1994)). "In the instance where the partiality develops during the course of the proceedings, it can be the basis of recusal only when the judge displays a deep-seated and unequivocal antagonism that would render fair judgment impossible." *Id.*

In this case, the Plaintiff's sole basis for asserting that these judges should disqualify themselves is based on perceived procedural delays. Plaintiff has failed to show that "a reasonable person with knowledge of all the facts would conclude that [this Court's] impartiality might reasonably be questioned." *Mayes,* 729 F.2d at 607. Plaintiff has failed to show that "the judge[s] display[] a deep-seated and unequivocal antagonism that would render fair judgment impossible." The Motion for Recusal (ECF No. 41) is DENIED.

**II.  Undisputed Material Facts**

In May of 2006, Plaintiff was hired as an office assistant by the County of San Diego Farm and Housing Advisor's Office. (Compl., ECF No. 1-1 at 3). In early 2008, Plaintiff was asked "to permanently take on duties Plaintiff had been performing while a co-worker was out sick." *Id.*

In 2008, Plaintiff, an African-American, met with his union representative Defendant Sayid, worksite organizer for SEIU Local 221, and told Sayid that he had been assigned additional job duties by the County. Plaintiff told Defendant Sayid that Plaintiff believed the decision by the County to assign him additional job duties was racially motivated because the prior white employee who held his position had not been assigned the additional job duties. Defendant Sayid is also African-American.

On March 10, 2008, Defendant Sayid sent a grievance to the County on behalf of Plaintiff which stated:

> SEIU Local 221 is asserting that Mr. Roland Hills (Office Assistant) has been tasked with duties outside the scope of his classification. Originally, these duties were the responsibility of a co-worker (Field Assistant) who is not working with the County at this time. Mainly, the responsibility for maintaining and operating the complex printer at the office has been an issue of concern and an extra workload burden. Furthermore, Mr. Hills is being asked to carry out purchasing duties as part of his routine, which is not included in his job description as an Office Assistant. SEIU requests that the Department immediately stop requiring Mr. Hills to carry out the purchasing function.

(Decl. Sayid Ex. A, ECF No. 31-4 at 9).

After Defendant Sayid sent the grievance to the County, "[Defendant] Sayid met with [Plaintif] several times to discuss his case....[and Defendant Sayid] met County Labor Relations in an attempt to resolve [Plaintiff's] grievance." (Decl. Sayid, ECF No. 31-4 at 19).

An email dated March 18, 2008, from Plaintiff to Defendant Sayid states: "Please clarify your position on why you feel that I haven't been discriminated against all though (sic) the previous white individuals that held my position were not assigned the disputed duties." (Pl.'s Opp'n Ex. 1, ECF No. 35-3 at 1). An email dated March 18, 2008, from Defendant Sayid to Plaintiff states: "I want to clarify that I did not say 'I don't feel you were discriminated against' or anything along those lines. What I did say is that discrimination will be very hard to prove in this instance. In order to prove discrimination you would basically have to show a clear nexus between your race and your assignment to those duties. In other words you would have to prove that management wanted to give you a hard time because of your race so they assigned you more work." *Id.* at 2.

An email dated April 22, 2008, from Plaintiff to Defendant Sayid states: "[P]lease provide me with a written copy of the labor relation's decision so that I can clearly understand their position." *Id.* at 3. An email dated April 22, 2008, from Defendant Sayid to Plaintiff states:

> At this point the County's contention still remains that the purchasing duties are well within your job classification. Furthermore, the County is saying implicitly but not explicitly, that the newer duties were assigned because they felt that you had the time in your regular workweek to accomplish these duties. They feel vindicated in this thinking by the fact that you have not had to utilize extra time (i.e. overtime, compt time, ect) to accomplish your duties since printing was assigned. Their suggestion is that if we have an issue with these assigned responsibilities to pursue the process outlined under Rule 12

> [Employee Request for Classification Review]. Unfortunately, I do not think that your case would have any standing under Rule 12 because you do not perform the disputed purchasing duties for 50% or more of your time. Furthermore, your current classification is vague enough to include ordering supplies when it states that 'management is not precluded from assigning other related functions not listed herein if such functions are a logical assignment for the position.' This catchall statement is very damaging to our point.
>
> Also ... you told me that the constant standing and bending associated with the printing duties were hard to do because of a pre-existing disability. That is why I suggested that if this was an issue to go to your doctor and get some kind of clarification as to the physical limitations .... It is in your discretion whether or not you want to present the doctor's note to your management.
>
> It is my belief, as a result of the vagueness of the job description of an Office Assistant, we do not have a case to challenge the assignment of the printing and purchasing duties.

(Decl. Sayid Ex. 7, ECF No. 31-4 at 15). Plaintiff did not request an accommodation from the County based on his physical limitations. (Decl. Sayid Ex. 9, ECF No. 31-4 at 19).

On April 23, 2008, Defendant Sayid sent a letter to Plaintiff which states: "This letter is in regards to your wish to have the County remove either the printing or purchasing responsibilities from your current job assignment as an Office Assistant.... Unfortunately, your case to challenge the assignment of the printing and purchasing duties lacks sufficient merit as a result of the built in vagueness of the job description of an [Office Assistant]." *Id.* at 17.

Two emails dated April 29, 2008, from Plaintiff to Defendant Gardner, organizing director for SEIU Local 221, contain requests by Plaintiff for a copy of the Labor Relation's decision and the bargaining agreement. (Pl.'s Opp'n Ex. 2, ECF No. 35-3 at 4). Defendant Gardner is African-American. An email dated April 30, 2008 from Defendant Gardner to Plaintiff states: "I will work with [Defendant Sayid] to obtain [information regarding the Labor Relation's decision] for you. We can send you a copy of the contract for your bargaining unit, if you provide us with your County Mail Stop address." *Id.* at 6. Defendant Gardner also stated, "If you disagree with the decision [Defendant Sayid] has made in your case then I ask that you send me an email outlining your specific areas of disagreement so that I may investigate the matter." *Id.* In an email dated May 1, 2008, from Plaintiff to Defendant Gardner, Plaintiff provided his address and states that he "expressed concern [to Defendant Sayid] about why [Plaintiff] as an African American employee was being required to do things

1  that the white employees that previously held [his] position were not required to do.
2  [Defendant Sayid] never asked management this question and just completely overlooked [his]
3  concern." *Id.* at 6.
4      Two emails dated June 30, 2008 and July 8, 2008 from Plaintiff to Defendant Gardner
5  contain requests from Plaintiff for a copy of the Labor Relation's decision. An email dated
6  July 21, 2008 from Defendant Sayid to Plaintiff states that Defendant Sayid "[is] working on
7  receiving a written response from Labor Relations on their stance on your position and its
8  duties. I should have that to you shortly." *Id.* at 9.
9      A letter dated August 3, 2008, from Plaintiff to "Secretary - Treasury SEIU" at SEIU
10 International's Washington D.C. address states: "Please consider this letter a formal charge of
11 violations of SEIU's Constitution ... which prohibits discrimination against members based on
12 race ...." (Pl.'s Opp'n Ex. 3, ECF No. 35-4 at 1). The letter states: "Discriminatory Acts by
13 SEIU Local 221 - My Union representative refused to investigate the discriminatory activities
14 that I presented to him when I requested assistance. It appeared as if he was actually working
15 on the side of the County instead of representing me." *Id*. The letter also states: "after
16 receiving little or no assistance from my union representative, I reported my concern [that the
17 decision to assign Plaintiff additional job duties was racially motivated] to [the County]
18 Administrative Human Resources office and told her that on [July 17, 2008] ... the [County]
19 office manager ...[told] a joke about a monkey with a southern accent. Being from Louisiana
20 I recognized this as being a typical racist way of talking about Afro-Americans." *Id.* at 3.
21 Plaintiff states in the letter that shortly thereafter another employee made a racial slur about
22 him. *Id*. Plaintiff requested that the international union "take over [Plaintiff's] representation
23 regarding the issues here in my office." *Id*. at 4.
24     On September 3, 2008, Defendant Sayid sent an email to Plaintiff which states that he
25 was forwarding "the only response that Labor Relations is willing to give. [He] was trying to
26 get a more detailed response, but it is not their policy [to] necessarily have an 'official'
27 response." (Decl. Sayid Ex. 9, ECF No. 31-4 at 19). The forwarded message was from Brad
28 Rankin, a County representative, to Defendant Sayid which states: "If Mr. Hills feels he is

1  working out of class, I would suggest he request [the department of human resources] to do a
2  position study.  The first step would require Mr. Hills to fill out a Position Information
3  Questionnaire and submit it to [the department of human resources]." *Id*.

4  On September 3, 2008, Plaintiff sent an email to Defendant Sayid which states: "I
5  recently sent your office my membership resignation.  Please see to it that my request is
6  processed as soon as possible." *Id*.

7  On September 10, 2008, Plaintiff submitted a Civil Service Rule VI Discrimination
8  Complaint Form detailing discriminatory acts by the County of San Diego.  On September 22,
9  2008, Plaintiff submitted his Withdrawal of Discrimination Complaint.  Plaintiff did not seek
10 representation from his union or inform his union about his Civil Service Complaint.  (Pl.'s
11 Opp'n Ex. 8, ECF No. 35-9 at 1; Pl.'s Opp'n Ex. 9, ECF No. 35-10 at 1).  Plaintiff has not sued
12 his employer, the County of San Diego ("the County"), in this action.

13 On February 2, 2009, Plaintiff filed a complaint with the California Department of Fair
14 Employment and Housing as well as the Equal Employment Opportunity Commission against
15 "Service Employees International Union" at the SEIU Local 221's San Diego address.  (Pl.'s
16 Opp'n Ex. 10, ECF No. 35-11 at 1).  The complaint states that on "July 30, 2008, [Plaintiff]
17 was denied representation by [SEIU Local 221] and the International Union in [his] grievance
18 against the County San Diego."  *Id*.  The complaint states: "Abdul Sayid ... and Deguasia
19 Gardner ... did not respond to [his] written request for representation ...."  *Id*.  The complaint
20 states: "I believe I was discriminated against when I was denied union representation to pursue
21 a union grievance against my employer for their discriminatory practices and harassment due
22 to race ...." *Id*.  The complaint also states that "on July 17, 2008 and July 29, 2008, [Plaintiff]
23 was denied a work environment free of harassment when [Plaintiff's supervisor] made a
24 racially derogative harassing comment ...." *Id.*  Plaintiff has submitted his "Right-To-Sue
25 Notice" dated August 17, 2009 captioned "Hills/Service Employees Int'l Union Local 221."
26 (Pl.'s Opp'n Ex. 11, ECF No. 35-12 at 1).

27
28

## III. Discussion

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (quotation omitted). "Once the moving party comes forward with sufficient evidence, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation omitted).

A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The materiality of a fact is thus determined by the substantive law governing the claim or defense. *See Anderson*, 477 U.S. at 252; *Celotex*, 477 U.S. at 322; *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson*, 477 U.S. at 248).

"In ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quotation omitted); *see also DiRuzza v. County of Tehama*, 206 F.3d 1304, 1314 (9th Cir. 2000) ("For purposes of summary judgment . . . , we must presume the facts to be those most favorable to the non-moving party."); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999) (The nonmoving party's declaration or sworn testimony "is to be accepted as true . . . . [The non-movant's] evidence should not be weighed against the evidence of the [movant]."). "But the non-moving party must come forward with more than the mere existence of a scintilla of evidence. Thus, 'where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial.'" *Miller*, 454 F.3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.") (citation omitted).

When the nonmoving party is proceeding pro se, the Court has a duty to consider "all of [the nonmovant's] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the nonmovant] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004) (citations omitted).

### A.     Claim One - Violations of Title VII and § 1981

Defendants Sayid, Gardner, Moore, and SEIU Local 221 contend that they are entitled to summary judgment on Plaintiff's first claim of intentional discrimination based on race in violation of Title VII and § 1981. Defendants contend that they properly processed Plaintiff's grievance regarding the additional work duties and Plaintiff has failed to show that they acted with discriminatory motive, purposeful discrimination, or disparate treatment. With regard to the Title VII claim, Defendants Sayid, Gardner, Moore, and SEIU Local 221 contend that the individual Defendants cannot be held liable and that Plaintiff failed to file charges against the individual Defendants with the Equal Employment Opportunity Commission which is a prerequisite to a suit. Defendants SEIU International and Stern contend that Plaintiff failed to exhaust his administrative remedies prior to asserting a claim under Title VII.

Plaintiff contends that he has exhausted his administrative remedies regarding all Defendants on the grounds that his "administrative complaint did not vary far from his court complaint." (ECF No. 34 at 7). Plaintiff contends that "charges and defendants not mentioned in the caption of Plaintiff's administrative complaint were clearly addressed in the Plaintiff's rebuttal to the answer the defendant submitted in response to his DFEH complaint." *Id.* Plaintiff contends that he has presented a prima facie case in his Complaint of discrimination by Defendants "regar[ding] the direct actions of the County" to support his discrimination

claim. Plaintiff asserts that the evidence shows that Defendants Sayid, Gardner, Moore, and SEIU Local 221 "completely ignored any race related inquiries." *Id*. at 6.

### i. Liability Under Title VII

A labor organization may "be sued as an entity ... in the courts of the United States. Any money judgment against a labor organization ... shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets." 29 U.S.C. § 185(b). "Under Title VII there is no personal liability for employees, including supervisors...." *Greenlaw v. Garrett*, 59 F.3d 994, 1001 (9th Cir. 1995) (citing *Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 587-88 (9th Cir. 1993) (affirming the dismissal of claims against defendants in their individual capacities); *see also Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 249 (1962) (explaining that Congress intended the union as an entity be the sole source of recovery and "[t]his policy cannot be evaded or truncated by the simple device of suing union agents or members ... for damages for violation of a collective bargaining contract for which damages the union itself is liable.").

Defendants' Motion for Summary Judgment of Plaintiff's Title VII claims against Defendants Sayid and Gardner in their individual capacities is granted.

### ii. Defendants Named in the EEOC Complaint

Generally, "Title VII claimants may sue only those named in the EEOC charge because only they had an opportunity to respond to charges during the administrative proceeding." *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir. 1990) (quotation omitted). However, "Title VII charges can be brought against persons not named in an EEOC complaint as long as they were involved in the acts giving rise to the EEOC claims." *Sosa*, 920 F.2d at 1458-59 (quoting *Wrighten v. Metropolitan Hosp.*, 726 F.2d 1346, 1352 (9th Cir. 1984)). "Further, where the EEOC or defendants themselves 'should have anticipated' that the claimant would name those defendants in a Title VII suit, the court has jurisdiction over those defendants even though they were not named in the EEOC charge." *Sosa*, 920 F.2d at 1459 (quoting *Chung v. Pomona Valley Community Hospital*, 667 F.2d 788, 792 (9th Cir. 1982)).

In this case, Plaintiff filed an EEOC complaint against "Service Employees International Union" and listed SEIU Local 221's address in San Diego. (ECF No. 35-11 at 1). The complaint states that Plaintiff wrote grievances to SEIU Local 221 "and elevated [his] complaints to SEIU International." *Id.* The complaint states that on "July 30, 2008, [Plaintiff] was denied representation by [SEIU Local 221] and the International Union in [his] grievance against the County San Diego." *Id.* The complaint states: "Abdul Sayid ... and Deguasia Gardner ... did not respond to [his] written request for representation ...." *Id.* The complaint states that the union failed to investigate [his] grievances of discriminatory practices and harassment by [his] employer, refused to oppose employment discrimination against its members, and joined in the County's discriminatory practices contrary to the Bargaining Agreement Anti-Discrimination Clause." *Id.*

The Court finds that although Plaintiff named SEIU International at SEIU Local 221's address in the EEOC complaint, SEIU International, SEIU Local 221, and Defendants Sayid and Gardner were involved in the acts giving rise to the claim and should have anticipated that Plaintiff would name it in a Title VII suit.

### iii. Title VII and § 1981 Claims Against Defendants SEIU Local 221, Sayid, Gardner, and Moore

"[L]egal principles guiding a court in a Title VII dispute apply with equal force in a § 1981 action." *Manatt v. Bank of America, NA,* 339 F.3d 792, 797 (9th Cir. 2003) (citing *EEOC v. Inland Marine Indus.*, 729 F.2d 1229, 1233 n.7 (9th Cir.1984) ("A plaintiff must meet the same standards in proving a § 1981 claim that he must meet in establishing a ... claim under Title VII ....")); *but see General Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 390 (1982) (explaining that a § 1981 claim may not be shown through disparate impact alone). To make a disparate-treatment claim, a plaintiff must establish that he was treated differently than similarly situated union members and a plaintiff must establish that there was discriminatory intent based upon plaintiff's membership in a protected class. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 631 (2007) (superseded by statute on other grounds as stated in *AT&T Corp. v. Hulteen*, __

U.S.__, 129 S.Ct. 1962, 1972 (2009)); *Domingo v. New England Fish Co.,* 727 F.2d 1429, 1438 (9th Cir. 1984).

Both Title VII and § 1981 apply the burden-shifting framework announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Plaintiff bears the initial burden of "establishing a prima facie case of racial discrimination." *McDonnell Douglas Corp.,* 411 U.S. at 802. The prima facie test was "never intended to be rigid, mechanized, or ritualistic." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978). If Plaintiff meets this burden, then the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason ...." *McDonnell Douglas,* 411 U.S. at 792. "Once the defendant produces sufficient evidence to satisfy this burden, 'the *McDonnell Douglas* framework-with its presumptions and burdens disappear[s],' and the plaintiff 'retains that ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination.'" *Beck v. United Food and Commercial Workers Union, Local 99,* 506 F.3d 874, 883 (9th Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142-43 (2000)); *see also St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 507-08 (1993)). Plaintiff may not merely rely on the initial prima facie showing of discrimination to carry his burden of persuasion. *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir. 1983) (plaintiff must show "specific, substantial evidence of pretext").

A plaintiff may prove discriminatory motive through circumstantial evidence alone. *Beck,* 506 F.3d at 883 (citations omitted); *see also Hawn v. Executive Jet Mgmt, Inc*., 615 F.3d 1151, 1156 (9th Cir. 2010) (plaintiff may show "an inference of discrimination in whatever manner is appropriate in the particular circumstances."). "Evidence that one or more similarly situated individuals outside of the protected class received more favorable treatment can constitute sufficient evidence of discrimination ...." *Beck,* 506 F.3d at 883.

"[A] union, entrusted with the enforcement of a labor contract, may violate [Title VII and § 1981] if by racial discrimination it interferes with its members' ability to enforce their contract." *Woods v. Graphic Commc'n,* 925 F.2d 1195, 1202-03 (9th Cir. 1991) (citation omitted); *see also Magana v. Com. of the Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997). A union is liable under Title VII and § 1981 where it intentionally follows a policy

1  of failing to pursue grievances based on discrimination. *Goodman v. Lukens Steel Co.*, 482
2  U.S. 656 (1987) ("[A] union that intentionally fails to assert discrimination claims, either to
3  avoid antagonizing the employer and thus to improve chances of success on other issues, or
4  in deference to the desires of its white membership, is liable under both Title VII and § 1981
5  ...."); *Woods,* 925 F.2d at 1203 (holding that the union "systematically failed to file a
6  grievance" on behalf of a union member based on racial discrimination by the union member's
7  employer); *but see Casamento v. Mass. Bay Transp. Auth.*, 550 F.3d 163, 165 (1st Cir. 2008)
8  (finding that plaintiff presented a prima facie case of gender discrimination; however, the
9  union explained that it failed to pursue plaintiff's grievance based on gender discrimination
10 due to lack of evidence of gender discrimination, and the court affirmed summary judgment
11 due to plaintiff's failure to present evidence of gender discrimination).

12 In this case, Plaintiff has submitted sufficient evidence to establishing a prima facie case
13 of racial discrimination. Plaintiff is African-American; therefore, he is a member of a
14 protected class. Plaintiff was a member of the union in good standing. Plaintiff told a union
15 representative that he was being racially discriminated against because he had been assigned
16 additional job duties that the prior white employee who had held his position was not assigned.
17 Plaintiff has stated in his verified complaint that SEIU Local 221 failed to file a grievance on
18 his behalf against his employer based on racial discrimination. The Court finds that Plaintiff
19 has made a prima facie case adequate to shift the *McDonnell Douglas* burden to Defendants
20 to articulate some legitimate, nondiscriminatory reason for their actions.

21 Defendants SEIU Local 221, Sayid, Gardner, and Moore have come forward with
22 evidence of the following race-neutral reasons for their actions: (1) Defendants pursued a
23 grievance on behalf of Plaintiff regarding the assignment of additional work duties to him
24 without regard to Plaintiff's race; (2) Defendants did not pursue Plaintiff's claim that he was
25 assigned additional job duties based on his race because there was a lack of evidence to
26 support the claim; and (3) Plaintiff did not inform Defendants SEIU Local 221, Sayid,
27 Gardner, and Moore about instances of discrimination at Plaintiff's workplace.

28

1    It is undisputed that Defendant Sayid, SEIU Local 221 representative, met with Plaintiff to discuss his concerns regarding the assignment of additional job duties by the County and Defendant Sayid sent a grievance to the County on Plaintiff's behalf. It is undisputed that SEIU Local 221 representative, Defendant Sayid "met with [Plaintiff] several times to discuss his case....[and that Defendant Sayid] met County Labor Relations in an attempt to resolve [Plaintiff's] grievance." (Decl. Sayid, ECF No. 31-4 at 19). The facts in the record show that Defendants pursued a grievance on behalf of Plaintiff regarding the assignment of additional work duties.

It is undisputed that Plaintiff told Defendant Sayid that Plaintiff believed the decision by the County to assign him additional job duties was racially motivated because the prior white employee who held his position had not been assigned the additional job duties. Plaintiff was asked in his deposition: "Did you ever describe for [Defendant Sayid] any additional evidence that you had concerning racial discrimination?" (Depo. Hills, ECF No. 31-3 at 41). Plaintiff stated: "I don't believe I told him about the incidents, no." *Id.* An email dated March 18, 2008, from Defendant Sayid to Plaintiff states: "[D]iscrimination will be very hard to prove in this instance. In order to prove discrimination you would basically have to show a clear nexus between your race and your assignment to those duties. In other words you would have to prove that management wanted to give you a hard time because of your race so they assigned you more work." (Pl.'s Opp'n Ex. 2, ECF No. 35-3 at 2). Plaintiff was asked in his deposition: "[D]id you ever make an effort to provide [Defendant Sayid] with the proof he was seeking?" (Depo. Hills, ECF No. 31-3 at 42). Plaintiff stated: "No, because he didn't tell me what would be necessary ...." *Id*.

Plaintiff stated in his deposition that shortly after he was hired by the County in 2006, his supervisor and another employee made derogatory comments about minorities, but when asked whether he told anyone at SEIU Local 221 about the incidents, Plaintiff stated that he did not. Plaintiff stated in his deposition that his adviser made racial jokes, but when asked whether Plaintiff complained to the SEIU Local 221 about his adviser, Plaintiff respond: "No, I don't believe so." *Id*. at 32. Plaintiff stated in his deposition that in 2008 a co-worker used

a racial slur, but when asked whether Plaintiff reported the incident to SEIU Local 221, Plaintiff responded: "No, I didn't report that." *Id*. at 35.

The facts in the record show that Defendants pursued a grievance on Plaintiff's behalf based upon the facts provided by Plaintiff. The Court concludes that Defendants have produced sufficient evidence to show the legitimate, nondiscriminatory reasons for their actions. Defendants have satisfied their burden under *McDonnell Douglas*. Accordingly, "the *McDonnell Douglas* framework-with its presumptions and burdens disappear[s]." *Beck,* 506 F.3d at 883 (quotation omitted). Plaintiff retains the ultimate burden of persuasion that he has been the victim of intentional discrimination. *Id*.

In this case, the evidence shows that Defendants pursued a grievance against Plaintiff's employer regarding the assignment of additional job duties to Plaintiff without regard to Plaintiff's race. Plaintiff has failed to show that he informed anyone at SEIU Local 221 about the specific instances discrimination at his workplace. Plaintiff has failed to show that he provided Defendants SEIU Local 221, Sayid, Gardner, or Moore[1] with support for his claim that he was assigned additional job duties based on his race other than his observation that the employee who held Plaintiff's position before him was white and had not been assigned the additional job duties. Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to demonstrate the existence of a triable issue of material fact with respect to whether Defendants SEIU Local 221, Sayid, Gardner, or Moore discriminated against Plaintiff based on his race by failing to pursue a grievance on Plaintiff's behalf against the County for race discrimination. *See Celotex*, 477 U.S. at 325. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of discrimination in violation of Title VII and § 1981.

**iv.   Title VII and § 1981 Claims Against SEIU International and Stern**

Defendants SEIU International and Stern contend that Plaintiff has failed to show there was an agency relationship between SEIU International and SEIU Local 221 to support a claim

---

[1] Plaintiff has also sued Sharon-Frances Moore, in her official capacity as President of SEIU Local 221, in this action. Plaintiff has failed to submit any evidence regarding Defendant Moore.

against the international union under Title VII and § 1981 for violations committed by SEIU Local 221.

Plaintiff contends that SEIU International should be held liable for the discriminatory actions of SEIU Local 221. Plaintiff contends that SEIU International exercises control over SEIU Local 221 as "established by Plaintiff in his Complaint." (ECF No. 35 at 8). Plaintiff also contends that the evidence shows that Defendants SEIU International and Stern "refused to investigate once made aware of Plaintiff's concerns even though SEIU's Constitution allows for such intervention." (ECF No. 34 at 7).

An international union may be held liable for the acts of the local union if there is evidence that it "instigated, supported, ratified or encouraged the Local's activities or that the Local acted pursuant to its agreement with the International ...." *Moore v. Local Union 569 of Intern. Broth. of Elec. Workers*, 989 F.2d 1534, 1543 (9th Cir. 1993); *see also Carbon Fuel Co. v. United Mine Workers of Am.,* 444 U.S. 212, 217-18 (1979) (finding that the international union was not liable for its failure to take action in response to a violation by the local union on the grounds that "[s]uch a rule would pierce the shield [of liability based on common-law agency] that Congress took such care to construct.") (abrogating *Kaplan v. International Alliance of Theatrical & Stage Employees*, 525 F.2d 1354, 1357 (9th Cir. 1975)). "[I]f the local exercises considerable autonomy in conducting its affairs, it cannot be regarded as an agent of the international, and the international accordingly cannot be held liable under an agency theory for the local's actions." *Laughon v. Int'l Alliance of Theatrical Stage Emp., Moving Picture Technicians, Artists & Allied Crafts of the U. S. & Can.*, 248 F.3d 931, 935 (9th Cir. 2001).

Plaintiff's Complaint cites to the following provisions in SEIU International's constitution: (1) "the International Union shall be composed of and have jurisdiction over its affiliated bodies and Local Unions ...."; (2) "with the approval of the International Union, Local Unions may establish different categories of membership ... [a]ny dispute respecting membership or eligibility for membership shall be decided by the International President ..."; (3) "No Local Union ... shall strike without previous notification to the International President

1  ...."; (4) "local Constitutions and Bylaws must be approved by the International"; and (5) "The
2  International President may assume original jurisdiction ... If the Local Union... a Local Union
3  officer or a Local Union member, or members, believe that the charges filed against a member
4  or officer of a Local Union involve a situation which may seriously jeopardize the interest of
5  the Local Union or the International Union or that the hearing procedure of the Local Union
6  will not completely protect the interests of a member, officer, or Local Union ...." (Compl.
7  ECF No. 1-1 at 7; Decl. Wood Ex. A, ECF No. 32-9 at 7-8, 24, 36).

8      Defendants SEIU International and Stern have submitted the declaration of Lori Wood,
9  deputy chief of staff for SEIU International, who states: "Local 221's members elect their own
10 officers, including the local union president." (Decl. Wood, ECF No. 32-8 at 2). Wood states:
11 "The president of Local 221 has the authority to hire, discipline, and discharge employees, and
12 has ultimate responsibility for the day-to-day operations of the union." *Id.* Wood states:
13 "Members of Local 221 elect a treasurer, who is responsible for overseeing the maintenance
14 of the local union's funds." *Id*. Wood states: "SEIU is not now, nor has it ever been,
15 responsible for the day-to-day operations of Local 221 or in the representation of Local 221's
16 members. SEIU is not now, nor has it ever been, responsible for hiring, training, or supervising
17 Local 221 employees." *Id*. at 3.  Wood states: "SEIU is not now, nor has it ever been,
18 responsible for negotiating collective bargaining agreements on behalf of the members of
19 Local 221." *Id*. Wood states: "SEIU is not now, nor has it ever been, responsible for handling
20 Local 221 members' grievances or any other aspects of contract administration on behalf of
21 or in conjunction with Local 221." *Id*. The Court finds that SEIU International has come
22 forward with evidence to establish the SEIU Local 221 exercises considerable autonomy in
23 conducting its affairs.

24     There is no evidence in the record that SEIU International took action after receiving
25 the letter from Plaintiff on August 3, 2008 describing instances of racial discrimination by his
26 employer, the County; however, SEIU International's mere inaction does not support liability
27 in this case. Plaintiff has not shown that SEIU International "instigated, supported, ratified or
28 encouraged the Local's activities or that the Local acted pursuant to its agreement with the

International." *Moore*, 989 F.2d at 1543. The Memorandum of Understanding between the County of San Diego and SEIU Local 221 governs grievance procedures and states: "A grievance is defined as an *allegation by an employee ... that the County* has failed to provide a condition of employment which is established by this Agreement or by a departmental Policy or Procedure Manual...." (Decl. Bacon Ex. 10, ECF No. 31-6 at 45) (emphasis added). Therefore, SEIU Local 221, not SEIU International, would have handled any grievance Plaintiff had against his employer.

Article XVII Section 2(f)(i) of SEIU International's constitution and bylaws provides:

> The International President may assume original jurisdiction: i. If the Local Union... a Local Union officer or a Local Union member, or members, believe that the charges filed against a member or officer of a Local Union involve a situation which may seriously jeopardize the interest of the Local Union or the International Union or that the hearing procedure of the Local Union will not completely protect the interests of a member, officer, or Local Union and such party requests that the International President assume original jurisdiction.

(Decl. Wood Ex. A, ECF No. 32-9 at 37). Article XVII Section 2(a) provides: "Charges against any member or officer of a Local Union shall be filed in duplicate with the Secretary of the *Local Union* ...." *Id.* at 36 (emphasis added). SEIU International's provision for "original jurisdiction" described above sets forth a method for which the international union could assume jurisdiction over a charge filed by a local union or member against another local union or member. The facts in the record show that Plaintiff did not file a charge against a another local union or member. The provision for "original jurisdiction" does not provide a method for SEIU International to process a grievance on behalf of a local union or member against the employer.

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff has failed to demonstrate the existence of a triable issue of material fact with respect to his claim of discrimination in violation of Title VII and § 1981 against SEIU International and Stern based on the acts of SEIU Local 221, Sayid, Gardner, and Moore. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim of discrimination in violation of Title VII and § 1981.

### B.     Claim Two - Violation of National Labor Relations Act, 29 U.S.C. § 158

Defendants Sayid, Gardner, Moore, and SEIU Local 221 contend that Plaintiff's second claim fails on the grounds that as an employee of the County, Plaintiff's claim is not governed by the National Labor Relations Act. In addition, Defendants Sayid, Gardner, Moore, and SEIU Local 221 contend that Plaintiff's payment of dues were properly reduced.

The National Labor Relations Act, 29 U.S.C. § 158, provides: "It shall be an unfair labor practice for a labor organization or its agents– [to force] or requir[e] any employer or self-employed person to join any labor or employer organization." 29 U.S.C. § 158(b)(1)(A). The National Labor Relations Act, 29 U.S.C. § 152, provides: "The term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include ... any State or political subdivision thereof ...." 29 U.S.C. § 152(2).

In this case, Plaintiff was employed by the County of San Diego, a subdivision of the State of California. Therefore, the National Labor Relations Act does not apply to Plaintiff. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for violation of the National Labor Relations Act, 29 U.S.C. § 158.

### IV.     Conclusion

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendants Service Employees International Union Local 221, Abdul Sayid, Dequasia Gardner, and Sharon-Francis Moore (ECF No. 31) and the Motion for Summary Judgment filed by Defendants Service Employees International Union and Andy Stern (ECF No. 32) are GRANTED. The Motion for Recusal filed by Plaintiff Roland Hills (ECF No. 41) is DENIED. The Clerk of the Court shall enter judgment in favor of Defendants against Plaintiff.

DATED: August 19, 2011

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge